OPINION
{¶ 1} This is an appeal from a judgment of the Court of Claims of Ohio granting summary judgment to the Ohio Department of Rehabilitation and Correction ("ODRC").
 {¶ 2} On October 27, 1999, plaintiff was incarcerated at the Ohio State Penitentiary ("OSP") at Youngstown, a "supermax" facility which housed high security prisoners. At approximately 10:30 a.m., plaintiff was taken to the shower at his request. As he was exiting the shower, plaintiff's foot slipped out from under him causing him to fall flat on his back. Subsequently, OSP's medical staff arrived and transported plaintiff to the infirmary for evaluation.
 {¶ 3} The shower facilities at OSP are individual stainless-steel shower stalls with a drain in the center of the floor. To enter the stall, the inmate must step up approximately 18 inches. A shower head and soap dish are affixed to the wall inside the stall. The stall is not equipped with grab bars or shower curtains due to the risk of inmate suicide and other security reasons. The shower stall did not have a floor mat at the time plaintiff fell. Since there is no shower curtain, water sprays on the concrete floor outside the stall. To exit the shower, an inmate must step down onto the concrete floor. The floor is painted with a non-skid paint and contains an additional drain. A stainless steel lip approximately three to six inches surrounds the stall to contain the water and may be used by the inmate to hold onto while exiting. Inmates are allowed to wear and are provided rubber shower shoes. The shower stalls are cleaned by a "porter," an inmate designated to clean the cell block.
 {¶ 4} Plaintiff filed an action with the Court of Claims of Ohio alleging he fell and sustained injuries as a result of ODRC's negligence. Specifically, ODRC was negligent in not providing protective measures to avoid falling in the shower and for allowing the shower to accumulate soap scum and filth. Further, plaintiff contends ODRC was on notice of at least one other incident where an inmate, Virgil Macklin, fell in the shower on September 27, 1999.[1]
 {¶ 5} The case was tried to a magistrate on September 26, 2001. The magistrate found ODRC was not negligent or, in the alternative, plaintiff's own negligence barred recovery. Specifically, the magistrate found "[t]here is great divergence in the testimony as to the condition of the shower on the day that plaintiff fell." The inmates testified that the showers were usually filthy and the porter was rarely allowed out to clean them. The officers testified that the porter was let out every day or, at a minimum, every other day. The magistrate noted "the weight of the testimony convinces the court that there probably were discarded bars of soap and soap scum along the corners of the showers, that the shower floor was somewhat slippery and that the cement floor outside the shower was wet. Nevertheless, in light of the demanding security measures needed for high-security inmates, such as plaintiff, the preponderance of the evidence does not establish that the shower was unreasonably dangerous under the circumstances." (Emphasis added.) Even if ODRC was negligent, the magistrate found plaintiff failed to use ordinary care to prevent his fall.
 {¶ 6} Plaintiff timely filed objections to the magistrate's decision. Plaintiff argued the magistrate improperly concluded security concerns "relieved" ODRC of its duty to exercise reasonable care, and that the decision was against the manifest weight of the evidence. The trial court disagreed with plaintiff and adopted the magistrate's decision and recommendation. The court noted that the magistrate did not conclude that security concerns "relieved" ODRC of its duty, it simply found that security concerns were a factor to consider in determining what care was reasonable. The court concluded the findings of fact were supported by the greater weight of the evidence. Plaintiff filed the instant appeal to this court.
 {¶ 7} On appeal, plaintiff asserts the following three assignments of error:
 {¶ 8} "ASSIGNMENT OF ERROR NO. 1:
 {¶ 9} "The trial court and the magistrate erred and abused their discretion in ruling that security relieves the defendant from utilizing reasonable measures to protect inmates from risk caused by accumulation of soap on a concrete floor without mats, curtains or safety bars.
 {¶ 10} "ASSIGNMENT OF ERROR NO. 2:
 {¶ 11} "The trial court and the magistrate erred and abused [sic] in finding Plaintiff-appellant was negligent.
 {¶ 12} "ASSIGNMENT OF ERROR NO. 3:
 {¶ 13} "The trial court's decision is contrary to law and against the manifest weight of the evidence."
 {¶ 14} In his first assignment of error, plaintiff argues that the magistrate and trial court improperly concluded that security measures "relieved" ODRC of its duty to exercise reasonable care. However, plaintiff misinterprets the magistrate's and trial court's decision. The trial court concluded, as the magistrate did, security concerns were one factor to consider when determining what care was reasonable under the particular circumstances of this case, and whether ODRC used such care.
 {¶ 15} As a general rule, prison officials owe inmates a duty of reasonable care and protection from harm. Williams v. Ohio Dept. of Rehab. Corr. (1991), 61 Ohio Misc.2d 699, 702. "Reasonable care" for purposes of a negligence claim is that care which would be used by an ordinarily prudent person under the same or similar circumstances. Id. Further, although the state is not an insurer of the safety of inmates, once it becomes aware of a dangerous condition, it must take reasonable care to prevent injury to the inmate. Id.
 {¶ 16} With respect to penal institutions, prison administrators must be accorded deference in adopting and executing policies and procedures to maintain order. Bell v. Wolfish (1979), 441 U.S. 520, 547
(stressing the need for prison administrators to be accorded deference in adopting and executing policies and practices to preserve internal order and to maintain institutional security); Deavors v. Ohio Dept. of Rehab. and Corr. (May 20, 1999) Franklin App. No. 98AP-1105, at 4. There are no constitutional principles requiring each and every prison within a state's system to be managed under identical terms. Linger v. Andrews, Franklin App. No. 02AP-39, 2002-Ohio-4495, at ¶ 23. "Rather, each institution encounters health, safety, and security concerns unique to its specific population. Accordingly, case law has consistently recognized that prison officials should be granted deference in implementing rules addressing those unique situations." Id.
 {¶ 17} OSP is a supermax facility housing the prisoners who present the highest security concerns for ODRC. As a result, there are security policies in place which are directly related to the nature of the inmates being housed. Block Lieutenant John Williams testified OSP did not put any type of fixture in the showers which could potentially be used by inmates for suicide attempts and other possible breaches of security. Further, the inmate taking the shower must remain in open view so that the officers on duty can monitor the inmate. Due to the supermax nature of OSP and the related, significant security concerns, OSP's policy regarding shower fixtures is entitled to deference. Therefore, we find the trial court did not err in finding security was a factor to consider in determining what care was reasonable. Neither the trial court nor the magistrate found security "relieved" ODRC of its obligations to use reasonable care as argued by plaintiff. Accordingly, plaintiff's first assignment of error is overruled.
 {¶ 18} Plaintiff's second and third assignments of error will be considered together. Plaintiff argues that the trial court erred in finding: (1) ODRC was not negligent; and (2) plaintiff's own negligence barred recovery. Essentially, plaintiff is arguing the trial court's decision is contrary to law and against the manifest weight of the evidence.
 {¶ 19} Judgments supported by some competent, credible evidence as to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,280. "`If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.'" Macklin v. Ohio Dept. of Rehab. Corr., Franklin App. No. 01AP-293, 2002-Ohio-5069, citing Estate of Barbieri v. Evans (1998), 127 Ohio App.3d 207, 211. For the reasons below, we conclude there is some competent, credible evidence to support the trial court's judgment as to both findings.
 {¶ 20} To succeed in an action for negligence, a plaintiff must show the existence of a duty of care, a breach of that duty, and an injury to the plaintiff that was proximately caused by the breach. Macklin. As stated previously, the state owes inmates a duty of reasonable care. Williams, supra. Although the state is not an insurer of the safety of inmates, once it becomes aware of a dangerous condition it must take reasonable care to prevent injury to the inmate. Id. Likewise, a plaintiff is required to use reasonable care to ensure his or her own safety. Macklin, citing Perry v. Eastgreen Realty Co. (1977),55 Ohio App.2d 130, 132. Further, plaintiff bears the burden of proof to demonstrate that ODRC was on notice or aware of the shower's condition where plaintiff fell. Williams, supra, at 702. Actual notice is notice obtained by actual communication to a party. Id. at 703. Constructive notice is defined as that which the "`law regards as sufficient to give notice and is regarded as a substitute for actual notice.'" Id.
 {¶ 21} In determining whether ODRC was negligent, there was conflicting testimony regarding the condition of the showers, how often they were cleaned, and whether ODRC knew about the filthy conditions. The inmates testified the showers were usually in bad condition, they complained regularly and the porter was only allowed to clean every 10 to 14 days Conversely, the officers testified that the inmates rarely complained and the porter was let out every day or every other day. Officers Kenneth Hayes and Amy Szalay testified if the inmates did complain and if the showers were dirty, showers were halted and the porter cleaned them. The magistrate and trial court resolved these evidentiary conflicts in favor of ODRC.
 {¶ 22} Nevertheless, plaintiff insists ODRC was on notice of the condition of the showers because inmate Macklin fell in the same shower the month before plaintiff. Plaintiff asserts after Macklin fell, mats were placed in various showers but not the particular shower at issue. However, the testimony reveals there was confusion about the existence and placement of mats in any showers after the Macklin incident.[2] At least one officer was not even aware another inmate had fallen.
 {¶ 23} Moreover, while Officer Hayes testified that, after inmate Macklin fell, other inmates occasionally complained about the showers, he could not recall which inmates complained or how often. Additionally, Officer Szalay testified inmates rarely complained about the shower conditions and she did not recall plaintiff ever complaining. In fact, plaintiff testified that, prior to his fall, he never made a written complaint or filed a grievance about the condition of the showers.
 {¶ 24} Further, Officers Szalay and James Liptak testified the porter is let out every day or, at a minimum, every other day. Officer Hayes testified the prison records, kept in the ordinary course of business, revealed that the porter was let out on October 25, 1999, only 1½ to 2 days prior to plaintiff's fall and, on October 27, 1999, the day of plaintiff's fall.[3] Officer Hayes further testified that, after the porter cleans the showers, at least one officer inspects them. If they are not clean, the officer orders the porter to clean them again. In this case, the prison records do not indicate that the porter had to be let out a second time to clean on either the 25th or the 27th.
 {¶ 25} Finally, Officer Szalay further testified that the particular shower being used is inspected before the inmate goes in. Plaintiff testified that he generally waited until the showers were clean before using them.
 {¶ 26} Based on the foregoing, the court finds that there is insufficient evidence to establish either actual or constructive notice on the part of ODRC.
 {¶ 27} Even if ODRC was on notice the showers accumulated soap scum and water, ODRC did not breach its duty of reasonable care to plaintiff. As stated in detail above, ODRC takes reasonable care to protect the safety of the inmates in the showers by cleaning regularly and responding to inmate complaints regarding the condition of the showers. Additionally, the concrete floor was painted with a non-skid paint to prevent inmates from slipping while exiting.[4] Finally, OSP provides shower shoes for the inmates which they are able to wear in the shower to prevent them from slipping. Therefore, the court finds the magistrate and trial court's conclusion ODRC was not negligent is supported by competent, credible evidence. See Macklin, supra; Williams, supra.
 {¶ 28} Alternatively, the magistrate and trial court found plaintiff's negligence acted as a complete bar to recovery under Ohio law. See R.C. 2315.19;[5] Hopkins v. Dept. of Rehab. Corr., Court of Claims No. 2001-07998, 2002-Ohio-5323 (plaintiff barred from recovery based on his own negligence, which was 50 percent or more than defendant). Plaintiff's testimony establishes he was aware another inmate had fallen in the same shower one month before plaintiff. Notwithstanding, plaintiff chose to take a shower despite the alleged deplorable conditions. Further, although plaintiff claims he was wearing shower shoes, Williams testified he was not wearing them.
 {¶ 29} The magistrate and trial court were entitled to resolve this evidentiary conflict in favor of ODRC. Macklin, supra. Plaintiff also failed to grab the lip when exiting onto the concrete floor. Plaintiff also testified that he did not use the soap dish to store his bar of soap on the day in question. Instead, plaintiff put the soap on the floor of the shower, either on his washcloth or the floor itself.[6]
Regardless, plaintiff contributed to the accumulation of soap on the floor and the slippery condition. As such, plaintiff failed to use reasonable care to prevent his fall. Therefore, we find the magistrate and trial court's decision regarding plaintiff's negligence is supported by competent, credible evidence.
 {¶ 30} Accordingly, plaintiff's second and third assignments of error are overruled. Based on the foregoing, plaintiff's first, second and third assignments of error are overruled.
 {¶ 31} The judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.
[1] Inmate Macklin also filed suit against ODRC. That claim was ultimately dismissed by this court with respect to the allegations of falling in the shower. Macklin v. Ohio Dept. of Rehab. Corr., Franklin App. No. 01AP-293, 2002-Ohio-5069.
[2] Plaintiff also maintains that, after he fell, ODRC installed a mat in that particular shower. However, pursuant to Evid.R. 408, that evidence is not admissible to show negligence as it is a subsequent remedial measure. Therefore, the court cannot and does not consider such evidence for purposes of this appeal.
[3] The records show that the porter was let out October 27 after plaintiff's fall. However, it is still significant because it demonstrates that the porter was let out at a minimum every other day, consistent with the officers' testimony.
[4] Lieutenant Williams testified unequivocally that the floor was painted with a non-skid paint. When he entered the shower stall to assist plaintiff, he was not afraid of slipping due to the non-skid paint. "[I]t is painted, but that paint is nonskid paint * * * that's why I didn't worry about stepping into that shower at that time." (Tr. at 107.)
[5] This statute was repealed effective April 9, 2003; however, the statute was in effect at the time of the incident in question and acts as a bar to recovery if the plaintiff is greater than 50 percent negligent.
[6] In his deposition, plaintiff testified that he had thrown his bar of soap on the shower floor. He stated that he did not use the soap dish because he was not going to put his soap on top of other people's soap scum. At trial, plaintiff testified that he put the soap on his washcloth, not directly on the floor.